UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                    **Criminal Action No.: 1:26-cr-00009-GNS**

**DANNY RAY JONES,**

    **Defendant.**

## SENTENCING MEMORANDUM
## OF DANNY RAY JONES

The Defendant Danny Ray Jones ("Defendant," "Mr. Jones" or "Danny"), by and through the undersigned counsel, files his Sentencing Memorandum as follows:

## I. INTRODUCTION

Notwithstanding the laws, rules, regulations and case law in carrying out its solemn and weighty responsibility of imposing Judgment in a criminal case, the Court ultimately is fashioning a very specific sentence, customized if you will, and fitted to the specific named Defendant before the Court. That Defendant, in this instance is, Danny Ray Jones. A good man with a loving wife and family, who had a long and successful career in tobacco, but has made a costly mistake. Mr. Jones is remorseful and ashamed to be in Court as a defendant; nonetheless, Danny accepts responsibility for his actions and is prepared to accept this Court's Judgement in all respects.

Mr. Jones respectfully requests this Court take into consideration the relevant information contained herein, to include the totality of the specific

1

circumstances of Mr. Jones' limited degree of actual involvement in the offense, along with the nature and circumstances of the offense, in determining a just sentence in his case. Specifically, Mr. Jones seeks a non-custodial sentence with appropriate conditions, as it would be a sentence no greater than necessary to achieve the goals of sentencing under § 3553(a)(2) and would be consistent with the statutory directives of *Bakley v. Washington*, 124 S.Ct. 2531 (2004), *U.S. v. Baker*, 543 U.S. 220 (2005) and *U.S. v. Fanfan*, 542 U.S. 956 (2004).

## II. APPLICABLE ADVISORY GUIDELINES RANGE

The advisory Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis, *United States v. Bolds*, 511 F.3d 368, 579-80 (6th Cir. 2007) (citation omitted), subject to and with the knowledge that the Guidelines are not binding.  In short, this Court is free to deviate from strict adherence to the Guidelines and may impose a sentence that is fair based on the specific facts of this case.

## III. APPLICATION OF SENTENCING FACTORS

Pursuant to the aforementioned authorities, this Honorable Court will consider the nature and circumstances of the offense, the history and characteristics of Mr. Jones, as well as various sentences available to the Court in determining a sentence for Danny that is sufficient, but not greater than necessary. As described in detail below, the totality of the circumstances point to a lesser, non-custodial, sentence being sufficient in Mr. Jones' case to satisfy the goals of retribution, deterrence and rehabilitation. Sentencing Courts have a duty to consider many

factors that the Guidelines specifically exclude from consideration – even factors prohibited by the former mandatory Guidelines – in determining the type of sentence that satisfies the sentencing mandate of § 3553(a). See *United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008).

## IV. MITIGATING FACTORS IN DETERMINING A REASONABLE SENTENCE

After *Booker*, this Court is statutorily required to impose a sentence that is minimally sufficient to accomplish the purposes of sentencing. The Guidelines are only one of five equally important factors to be considered in determining a minimally sufficient sentence.

As applied to Mr. Jones, a sentence in line with the Guidelines range substantially overshoots the mark necessary to satisfy the goals of reformation, deterrence, incapacitation and rehabilitation and would result in a sentence greater than necessary, even though such a sentence would be within the Guidelines range.

A.  Danny Jones' Comparatively Minor Role in the Offense

By way of mitigation and for purposes of considering the disparity of involvement among conspirators as it pertains to sentencing, Mr. Jones points out the vastly differing role he played compared to the roles of the two defendants in the "related cases" of David Wisdom ("Wisdom") and Larry Walden ("Walden").

The Criminal Information [DE 1] in Mr. Jones' case refers to both conspiracy and aiding and abetting. Truth be told, Mr. Jones conduct aligns more logically with

3

one who aided and abetted the wrongdoing enterprise of Wisdom and Walden, which puts him on the low end of the relative culpability scale.

Wisdom and Walden are referred to as DW and LW in Mr. Jones Criminal Information. These men have been known to Mr. Jones for nearly two (2) decades through their respective involvement in the tobacco industry. Mr. Jones considered Wisdom to be both a colleague and a friend, while Walden was more of a colleague of Danny's than a friend. (Wisdom and Walden were friends and colleagues.)

Per the public filings in the related cases of Walden and Wisdom, the Government in its Sentencing Memorandum in both cases, described both Wisdom and Walden as agricultural producers in Kentucky who abused the system.... "to steal from the federal coffers and profit unjustly from taxpayer dollars". The Government's Sentencing Memorandum went on to say:

- "Wisdom received $1,941,007 in crop insurance indemnity payments, across four (4) years, to which he was not entitled."

- "Walden received a "staggering" $9,960,817.19 in crop insurance indemnity payments, across ten (10) years, to which he was not entitled."

In contrast, Mr. Jones' involvement can be counted in days – three. As part of the Judgements in their criminal cases, Wisdom was ordered to pay One Million Nine Hundred Forty-One Thousand Seven Dollars and 00/100 ($1,941,007.00) as restitution (which seems to be predicated upon only the payment he received). As such, the Court should use as restitution the amount of money Danny received, One Hundred Nine Thousand One Hundred Forty-One Dollars and 00/100 ($109,141.00).

4

Walden was ordered to pay Nine Million Nine Hundred Sixty Thousand Eight Hundred Seventeen Dollars and 19/100 ($9,960,817.19) in restitution. The Judgments in the criminal case filings for both Wisdom and Walden are attached hereto respectively as **Exhibit A** and **Exhibit B** and incorporated herein by reference.

It is clear that crop insurance fraud was woven into the fabric of Walden and Wisdom's business, not so for Mr. Jones who has never filed an insurance claim. It was no small matter for Wisdom and Walden to create their false claims, prepare fabricated documents and ultimately engage others (aiders and abettors?) to help give their fraud the appearance of legitimacy. One of many that Wisdom and Walden turned to in aid of their scheme was Danny Ray Jones.

In 2018 Wisdom approached his friend, Danny Ray Jones, and asked him to do a "check swap" with him. This one and only time Mr. Jones helped Wisdom, Danny netted all of One Thousand Five Hundred Dollars and 00/100 ($1,500.00).

Thereafter, in 2021/2022 Wisdom asked Mr. Jones if he would help Wisdom out and make some money by "swapping checks" with Walden. The three of them met once or twice without discussing details or particulars, Wisdom told Walden and Mr. Jones what to write their check swap amounts for.  As a result of the check swapping with Walden, Mr. Jones netted One Hundred Seven Thousand Six Hundred Forty-One Dollars and 00/100 ($107,641.00).

Between Wisdom and Walden in the transactions described above, Mr. Jones' total profit was One Hundred Nine Thousand One Hundred Forty-One Dollars and

5

00/100 ($109,141.00). Mr. Jones has since remitted to the Clerk of Court this amount (times 2) for a total voluntary pre-sentence restitution payment of Two Hundred Twenty Thousand Dollars and 00/100 ($220,000.00).[1]

It is important to underscore that Mr. Jones was never clued in on any of the particulars of what Wisdom and Walden were up to, nor was Mr. Jones asked to create false paperwork. He only swapped checks. He did not recruit others or participate in any other aspect of the conspiracy. This is not to suggest that Mr. Jones was totally duped. Mr. Jones believed/knew (without having to be told the particulars) what he was doing had something to do with crop insurance. This is why his role is best depicted as an aider and abettor in Wisdom and Walden's conspiracy.

In contrast to Wisdom and Walden, Mr. Jones has:

(1) Never filed a crop insurance claim;

(2) Never devised a scheme to defraud the FCIC;

(3) Never created any fraudulent receipts in aid of a claim;

(4) Never been a leader, organizer, recruiter or manager in any enterprise involving defrauding federal crop insurance; and

(5) Never sought active participation in the scheme, but instead was sought out by Mr. Wisdom, who pled guilty to conspiring to commit

---

[1] As of the time of filing this Memorandum, the two (2) checks described above had not cleared either Mr. Jones' bank, nor has receipt been confirmed by the Finance Department in the Western District; thus a copy of the two (2) checks, written by Mr. Jones are attached hereto collectively as **Exhibit C**.

crop insurance fraud under §18 USC 371 (a five (5) year felony) and who received a sentence of forty-eight (48) months, and then by Walden, who pled guilty to conspiring to commit money laundering (a twenty (20) year felony) and who received a sentence of fifty-two (52) months.

Notwithstanding Mr. Jones' minor role when compared to Walden and Wisdom, the plea offer to Mr. Jones by the Government was to plead guilty to conspiring to commit crop insurance fraud under Title 18 USC 1014 (a thirty (30) year felony exposure), compared to five (5) years felony exposure, for Wisdom and twenty (20) years felony exposure,  for Walden). This plea was offered at a time when it was believed that Mr. Jones had, in addition to check swapping, created false documents to be submitted to insurance, which ultimately was corrected in the record. [2] The fact materially changes how Danny's case should be viewed in terms of sentencing.

The takeaway is that when you compare the three defendants, Mr. Jones, Wisdom and Walden and assess their actual roles and involvement in the illegal enterprise, Mr. Jones was essentially at the bottom of the proverbial ladder, was recruited by a friend and a colleague to help them carry out what apparently was their lucrative business of making money off of fraudulent crop insurance claims. The "profit" made by Mr. Jones from check swapping was insignificant compared to

---

[2] See Joint Motion to Clarify and/or Correct Plea Agreement [DE 17] and Order granting same [DE 20].

7

what Wisdom and Walden got (and Mr. Jones' net worth), suggesting that Mr. Jones felt peer pressure (and would acknowledge same) to help out his friend and colleague, and, yes, he made "some" money. Given that Mr. Jones was not aware of the details or the magnitude of what Wisdom and Walden were doing, he would not logically have understood the serious jeopardy into which he placed himself by agreeing to their check swapping request.

In sum, based on Mr. Jones' role and conduct in this matter, there is just something fundamentally harsh in Danny being incarcerated and losing his lawfully earned life's savings for involving himself in the way he did. Fortunately, this Court has the authority to impose a just sentence which ensures this does not happen.

B. <u>Age</u>

Danny Jones is 72 years old but will turn 73 in September 2026. Danny's dad died at age 73 and his mom at age 74. Given his family history, his aging physical condition and overweight condition, taken together with US statistics on mortality, Danny has a life expectancy of about five (5) years. Incarceration for a year or more would mean Danny would spend a disproportionately high percentage of what time has left on this earth separated from his wife, family, community and society. Surely this type of an "effective" sentence would be disproportionate and "more than is necessary" under the totality of the circumstances. We bring Danny's age and life expectancy to the Court's attention as a factor that tends to support a non-custodial

8

sentence with conditions. We further point the Court to the benefit of Danny being present in his agriculture-based community doing community service and other activities specifically so Danny can be an example of remorse and rehabilitation to his family and community.

C.  Remorse

Danny finds himself in more life altering trouble than he ever imagined possible. He has, however, had much time to reflect on his actions and takes full responsibility for his poor decisions. Remorse by Danny is an understatement. He is fully committed to making amends and to never putting himself in jeopardy, nor his wife or family ever again. In Danny's case, "true fear of losing all that you have and hold dear" has had a bone-chilling effect on Danny and he is committed to continuing to undertake active, corrective rehabilitation activity.

Danny has humiliated himself, embarrassed his family and knows he let a lot of people down by his behavior. For a man in the twilight of his life, this ordeal has been a wakeup call. He realizes that he alone, by his actions, has jeopardized all that he holds dear in this world; love of family, community and country and he is deeply remorseful about it all.

Mr. Jones' remorse is reflected in him being truthful with the agents during their initial and subsequent meetings with him – especially about what he did. When Mr. Jones first retained counsel, it was and has been his desire to admit to

9

what he did, pay his debt to society and pray that he be given the opportunity to repair the damage he has caused by living a productive law-abiding life.

Mr. Jones, in another act of remorse, voluntarily returned the One Hundred Nine Thousand One Hundred Forty-One Dollars and 00/100 ($109,141.00), the entirety of the profit he received for the check swaps, by depositing Two Hundred Twenty Thousand Dollars and 00/100 ($220,000.00) with the Clerk of Court as restitution (see Footnote 2). This is a solid sign that Mr. Jones has "gotten the message," is learning to accept what he has done and is taking proactive rehabilitative action. All of which, we respectfully submit, weighs in favor of a non-custodial sentence with conditions for Danny.

### D. <u>Restitution</u>

The Plea Agreement [DE 14] stipulates that the guidelines calculation for restitution is Three Million Seven Hundred Twenty-Six Thousand Seven Hundred Twenty-Nine Dollars and 00/100 ($3,726,729.00) This seems disproportionately harsh as applied to Mr. Jones given his minor role and profit of One Hundred Nine Thousand One Hundred Forty-One Dollars and 00/100 ($109,141.00). Further, it appears Wisdom's restitution was set based on the payments he received to which he was not entitled, One Hundred Nine Thousand One Hundred Forty-One Dollars and 00/100 ($1,941,007.00). As such, we respectfully ask the Court to consider imposing both a restitution obligation and sentence in line with the $109,141 figure Mr. Jones received, as it aligns with Wisdom's restitution order and it more

accurately reflects Danny's precise criminal activity (at the level of aiding and abetting the conspiracy). Such an approach will allow for the punishment to better fit the crime, and again, suggests and points to a non-custodial sentence with terms and conditions.

As to restitution, we respectfully ask that it be made subject to "joint and several" liability with the restitution orders in the related Wisdom and Walden cases. Mr. Jones further asks that he be allowed to make restitution payments over time (if greater than his recent $220,000.00 payment) (see Footnote 2).

E. Family and Community

As the Court can see from the family and friend letters of Mr. Jones (attached hereto collectively as **Exhibit D** and incorporated herein by reference), Danny enjoys a close, tight and loving family and home life situation. Both of Danny's children live a stone's throw away from Danny's house. It is also clear that "dad" is the head of the family and plays a daily active role in the lives of his wife, children and grandchildren. When all factors are weighed in totality, the loss of Danny's daily presence in his home is a high price for his family to pay.

The letters from Danny's friends in the community, show that he is a long-time active leader, quiet giver of his time and money and an important and valued part of his community. Having Danny present in his community with his family will allow him to demonstrate his humility and by being a positive role model for others, will demonstrate that he is truly rehabilitated. It is better that Danny be back in

11

his community to be a positive influence for good, rather than incarcerated. He has been humbled and asks God and this Court for forgiveness.

### F. Self-Surrender/Report and Recommendation for FCI Butner

Should the Court determine that an active sentence is appropriate, Mr. Jones would ask that he be allowed to self-surrender and report as directed by the U.S. Marshall.

To the extent that the Court can recommend a facility for incarceration, should the Court impose an active sentence, Mr. Jones would ask the Court to recommend FCI Butner; which is not too far from Mr. Jones' home in Fuquay Varina, North Carolina.

### CONCLUSION

On May 6, 2026, this Court, in its role as sentencing authority, will play an important and pivotal role in Danny's life. Danny respectfully asks this Court to individualize his sentencing as broadly as the statutory framework allows and requires. If this Court would see fit to give Danny a sentence of probation with conditions, such a sentence would allow Danny to continue to take care of his family and participate in his community. A term of probation with conditions would also provide ample punishment for Danny but also give the potential for Danny to maintain a law-abiding life without removing his ability to give back to society. Any greater sentence would be more than necessary to fulfill the sentencing purposes contained in 18 USC § 3553.

13

Respectfully submitted this the 29th day of April, 2026.

SHANAHAN LAW GROUP, PLLC

By:  /s/ Kieran J. Shanahan
Kieran J. Shanahan, NCSB# 13329
128 E. Hargett St., Ste. 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
kieran@shanahanlawgroup.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 29th day of April, 2026 electronically filed the foregoing **Sentencing Memorandum of Danny Ray Jones** by using the CM/ECF system, which will send an electronic notification of the document to all counsel of record and the US Probation Office as follows:

David Weiser
Assistant U.S. Attorney
717 West Broadway
Louisville, KY 40202
david.weiser@usdoj.gov

Michael C. Wilson
U.S. Probation Office
400 E. Main Avenue, Suite 200
Bowling Green, KY 42101
michael_wilson@kywp.uscourts.gov

**SHANAHAN LAW GROUP, PLLC**

By:  */s/ Kieran J. Shanahan*
Kieran J. Shanahan, NCSB# 13329
128 E. Hargett St., Ste. 300
Raleigh, North Carolina 27601
Telephone: (919) 856-9494
kieran@shanahanlawgroup.com
*Counsel for Defendant*